UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN SOUSA, Plaintiff | ) ) ) | |
| VS. | ) | C.A. NO.: 06-400S |
| TALLMAN & MACK, INC. | ) ) | |

**PLAINTIFF'S PRE-TRIAL MEMORANDUM**

**A.** The incident that is the subject of this case occurred on April 21,2004. The Plaintiff, John Souza, was working on the fishing vessel, the F/V Mendonsa, which was fishing off the coast of Newport, RI. The vessel was owned by the Defendant, Tallman & Mack, Inc. The regular, and very experienced Captain, George Mendonsa, was out sick on the day in question. He was replaced by Alan Wheeler. Apparently this was Mr. Wheeler's first time operating as Captain of the vessel while the boat was being used to set leaders for the purpose of laying fishing nets.

Mr. Souza's role on the boat was to coordinate the other eight or nine fisherman to set leaders for the purposes of laying fishing nets. During this process, a run line connected to the leader was laid across the stem of the boat. At some point, Alan Wheeler miscalculated his proximity to a skiff and turned into it prematurely. To compensate for his miscalculation, Mr. Wheeler repeatedly reversed directions to properly position the boat. This action snapped the run line, which then ran across the stern until it struck the Plaintiff, John Souza, in his lower abdomen. The line continued to run, carrying Mr. Souza with it until he was violently thrown into the guardrail of the boat. The force of the running line was too great for the guardrail to thwart Mr. Souza's momentum. He was dragged over the side of the boat and catapulted into the sea. Despite the fact that Mr.

Souza was in full fishing gear, could not swim, and was in terrible pain, he miraculously survived the incident, but not without suffering severe injury.

Mr. Souza spent the next year trying to regain his health and strength so that he could return to the job that he loved and had spent more than a two thirds of his life doing. Despite extensive treatment, physical therapy, the use of a molded back brace, and exercise programs, he was unable to do so. He currently still works for the Defendant, however, his role has been reduced to fixing fishing nets on shore.

Dr. Thomas Morgan determined that the Plaintiff has suffered a 50% compression fracture at the L2 lumbar vertebrae. Using the 5th Edition of the AMA Guidelines, Table 15-3, Dr. Morgan determined that Mr. Souza's condition has created a 13% whole person permanent impairment. This disability is causally related to the accident that occurred on April 21, 2004. The Plaintiffs past medical history was unremarkable for any similar injury. While the percentage is significant, the words of treating physician W. Lloyd Barnard Jr., M.D. help to put the significance of the injury into perspective in his report of December 22, 2004:

> **The extent of any future bills he may accrue for treatment of symptoms related to this injury are not able to be guessed at. The only thing to say is that this injury has converted a healthy, active, strong man into someone who in all likelihood will never return to his previous profession... (W. Lloyd Barnard Jr., M.D. 12/22/04)**

While the physical disability is clearly significant, the emotional aspects of this incident, and their effects on the Plaintiffs quality of life, are just as important.

John Souza has dedicated his life to fishing. It is the only profession he has ever known, and the only one he enjoys. Mr. Souza began working for the Defendant in 1956, and has continued to work for them through the present. In fact, the only time the

Plaintiff was not employed by the Defendant was when he honorably served his country in the US Army between 1959 and 1962. At seventy (70) years old, it would appear that any future that Mr. Souza would have had in his previous position, if this incident had not occurred, would have been short lived. However, the regular Captain of the vessel, George Mendonsa, was over 80 years old at the time of the incident. He continued to work into his 80's, much like his father who fished until the age of 86. Although the Plaintiff is beyond the age of retirement in most professions, it is clear that fishermen with a love of the sea dedicate their lives to it for years beyond the average worker.

As a result of this incident, Mr. Souza has been unable to return to the sea and instead is forced to remain on shore fixing nets. He is no longer able to quahog with his wife, an activity they both very much enjoyed. The incident replays over and over in the Plaintiffs head through frequent nightmares. Mr. Souza has mentioned to several of his physicians an overall feeling of depression.

The impact that the incident of April 21, 2004 has had on the Plaintiffs life is significant and severe. His injuries have deprived him of the job that he loved and the activities he enjoyed. His overall physical and mental health has been greatly diminished, and Mr. Souza has no choice but to accept his disability, as it is permanent. The negligence of the Defendant, through its agents and employees, has proximately caused Mr. Souza's damages.

Plaintiff expects to call the following witnesses at time of trial:

1. John Souza, whose testimony is summarized above.
2. Dorothy Souza, John Souza's wife of almost fifty (50) years, who will testify as to pain and suffering that her husband experienced after the accident and the change in her husband's lifestyle since the accident. She will also testify about her husband's frustration and depression about not being able to return to his occupation as a commercial fisherman.

3. Joseph Linhares, 11 Second Street, Portsmouth, Rhode Island. He was a member of the crew of the Maria Mendonsa on the day that the accident occurred. He will testify that Allan Wheeler turned the boat too quickly while he was attempting to line up the boat to get in close proximity to the net and cage. He will also testify that Allan Wheeler used too much throttle on the boat, which put too much strain on the leader and caused the line to go over the bits. It will be his testimony that Allan Wheeler's over-throttling of the boat is what caused the line to strike Mr. Sousa in the chest, catapulting him off of the side of the vessel.
4. George Mendonsa, 9 North Drive, Middletown, Rhode Island. It is expected that Mr. Mendonsa, who captained Maria Mendonsa for many years, will testify as to the proper manner in which to tie in the leader line to the fishing nets and it is further expected that his testimony will be that Allan Wheeler failed to use due care in the operation of the Maria Mendonsa at the time of the accident in question.
5. Thomas R. Hill, marine surveyor, a principal of Atlantic and Pacific Marine Consultants, Inc., 27 Ferry Street, Gloucester, Massachusetts. He will be called by the plaintiff as an expert witness. It is expected that Mr. Hill will testify that Captain Wheeler used poor situational awareness in the operation of the vessel during the deploying of the lead line. He is also expected to testify that Mr. Wheeler was not paying due attention to the aft work deck during the deployment of the gear and was not situationally aware of the physical circumstances, ultimately leading to the accident in question. Finally, it is expected that he will testify that through the improper operation of the vessel, Captain Wheeler caused a high load to develop on the line on deck. This occurred while the line was being deployed/worked with. The high tension on the line caused the subsequent injury and ultimate ejection of the plaintiff from the vessel.
6. Dr. Thomas F. Morgan, a board certified neurologist, will testify that Mr. Sousa sustained multiple injuries to the lower abdomen as well as a compression fracture of the L2 lumbar vertebrae as a result of the incident of April 21, 2004. He will testify that this compression fracture is a source for chronic pain and has prevented Mr. Sousa from returning to heavy duty type work. He will further testify that using the AMA Guides, 5th Edition, Table 15-3, the impairment from plaintiff's lumbar spine injury qualifies for a 13% to the whole person disability due to the 50% compression of the vertebral body. It is his further opinion that this injury superimposed upon chronic degenerative disease of the lumbar spine and associated chronic pain would prevent Mr. Sousa from returning to heavy duty work.
7. Plaintiff may call Allan Wheeler, President of the defendant corporation, who captained the boat on the day of the accident to testify about his actions on that date.

## B. <u>SUPPORTING LAW WITH CITATIONS OF AUTHORITIES</u>

Plaintiff has brought this action in the United States District Court pursuant to the Jones Act, so called, which is located a 46 U.S.C. 688. That statute provides as follows:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such actions all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply; and in cases of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States confirming or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be in the court of the district in which the defendant employer resides or in which his principal office is located.

As part of the recodification of 46 U.S.C., a current draft of what will be 46 U.S.C. § 30104, changes the wording as follows:

> (a) CAUSE OF ACTION: A seaman injured in the course of employment or, if the seaman dies from the injury, personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against his employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to action under this section.
>
> (b) VENUE: An action under this section shall be brought in the judicial district in which the employer resides or employer's principal office is located.

A quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence, … and even the slightest negligence is sufficient to sustain a finding of liability." *See, Carvalho v. Schooner Pilgrim, 631, So. 2nd 725, 729 La. App. 1994, Citations omitted. See also, Gautreaux v. Scurlock Marine, Inc., 107 P.3 331, 1997 AMC 1521 (5th Cir. 1997); Rannals v. Diamond Jo, 265 P.3rd 442, 2002 AMC 1097 (6th Cir. 2001); Karvelis v. Constellation Lines S.A., 806 P.2" 49, 1987 AMC 616 (2nd Cir. 1986); Havens v. F/T Polar Mist, 996 P.2" 215, 218, 1994 AMC 605.*

Since the plaintiff is a seaman, he is owed a far greater duty of care than a passenger. "Under the Jones Act, an employer is liable for the injuries negligently inflicted on its employees by it agents, officers and employees. The Jones Act also provides seamen a "featherweight" burden for showing causation for injuries and evidence of the slightest negligence is sufficient to sustain a finding of liability". *Cantril v. American Mail Line, 257 P.2d, 179 (Wash. 1953).*

45 U.S.C. §51, sets forth the rule of comparative negligence consistent with maritime law:

"Negligence of the plaintiff doesn't bar recovery but comparative negligence reduces his damages in the ratio of the defendant's negligent to his own."

The common law defense through negligence claims of assumption of the risk and the maritime doctrine of the primary duty do not apply to the Jones Act actions. Instead, comparative fault of the plaintiff is considered in determining the award of damages. *See, Hopkins v. Jordan Marine, Inc., 271 F.3rd, 1, 2001 A.M.C., 2982 (1st Cir. 2001).* Furthermore, assumption of the risk has been eliminated as a defense to claims for negligence under the Federal Employer's Liability Act, *See 45, U.S.C. §54,* which is incorporated into the Jones Act. *Sacony-Vacuum Oil Co. v. Smith, 305, U.S. 424, 1939, A.M.C. 1 (1939); Ammar v. United States, 342, F.3rd 133, 2003 A.M.C., 2451 (2nd Cir.) 2003.*

**C.** Plaintiff intends to offer the following exhibits as evidence at the time of trial:

1. Newport Hospital report dated April 21, 2004.
2. Newport Hospital diagnostic imaging reports dated April 21, 2004, June 7, 2004 and July 30, 2004.
3. Vanderbilt Rehabilitation Center records from July 2, 2004 through August 3, 2004.
4. Records of Dr. Sumit Das dated June 18, 2004 through August 13, 2004.

5. Records of Dr. W. Lloyd Barnard, Jr. of University Orthopedics dated December 22, 2004 and June 21, 2005.
6. Records from Dr. Thomas Morgan dated January 19, 2007.
7. Diagrams of netting used on the boat in question.
8. Photograph of the netting in the ocean.
9. Photographs of the skiffs and boats used for the netting of fish.
10. Expert report of Atlantic and Pacific Marine prepared by Thomas Hill.
11. Life expectancy tables from the United States Department of Labor which indicate that plaintiff has a 12.6 year life expectancy.

**D.** PROBALE LENGTH OF TRIAL: 3-4 days.

**E.** No anticipated motions in limine at this time.

**F. JURY INSTRUCTIONS:**

Judge's Opinion:

Nothing I say in these instructions is to be taken as a suggestion that I have an opinion about the facts. It is your views of the facts which should determine your verdict. If, during the course of this trial, or in giving you these instructions, this Court has said or done anything that has caused you to believe that it was indicating an opinion as to what the facts in the case are, I instruct you that the Court intended to indicate no such opinion. You should not permit such words or acts, if any, to have any influence whatsoever on your determination of what the facts are. It is the function of the jury exclusively to resolve questions of fact, and it is your duty to guard zealously against any usurpation of that function, however unintentional it may have been.

Bias or Prejudice or Sympathy

You have been sworn as jurors in this ease to try the issues of fact presented by the allegations stated in plaintiff's complaint and. defendant's answer. You are to perform this duty without bias toward or prejudice to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court, and reach a just verdict, regardless of the consequences.

Equal Treatment of Plaintiff and Defendant

The jury should consider each instruction given to apply separately and individually to the plaintiff and to the defendant.

The defendant is entitled to a fair consideration of its defenses against the plaintiff.

This case should be considered and decided by you as an action between the parties of equal standing in the community, of equal worth, and holding the same or similar stations of life. A corporation is entitled to the same fair trial at your hands as a private individual. All parties, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

Statements of Counsel

Statements and arguments of counsel are not evidence in the case. When, however, the attorneys on both sides stipulate or agree as to the existence of a fact, the jury must accept the stipulation and regard that fact as proven.

What Constitutes Evidence

The evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted or stipulated; and all facts and events which may have been judicially noticed.

Any testimony as to which an objection was sustained by the court, and any testimony ordered stricken by the court, must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

Direct and Circumstantial Evidence

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts. One is direct evidence -- such as the testimony of any eyewitness. The other is indirect or circumstantial evidence -- the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.

Facts may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved.

The law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accord with a preponderance of all the evidence in the case, both direct and circumstantial.

**SUPPORTIVE AUTHORITY**

See, Oury v. Greany, 107 R.I. 427, 267 A.2d 700 (R.I. 1970); Waldman v. Shipyard Marina Inc., 102 R.I. 306, 230 A.2d 841 (1967).

Significance of Objections

You must determine which of the witnesses you believe, what portion of their testimony you accept and what weight you attach to it. At times during the trial I may sustain objections to questions asked without permitting the witness to answer or, where an answer has been made, may instruct that it be stricken from the record and that you disregard it and dismiss it from your minds. You may not draw any inference from an unanswered question nor may you consider testimony which has been stricken in reaching your decision. The law requires that your decision be made solely upon the competent evidence before you. Such items as I exclude from your consideration will be excluded because they are not legally admissible.

You should not permit an objection by counsel to the admission of evidence, or to a ruling of this Court, to create any bias or prejudice in your minds with respect to counsel or the party he/she represents. It is the duty of counsel to protect the rights and interests of his/her client, and in the performance of that duty he/she may freely make objection to the admission of proffered evidence and no adverse consequence should result from exercising that right.

Evaluation of the Evidence

The law does not require you to accept all of the evidence I shall admit, even though it be competent. In determining what evidence you will accept you must make your own evaluation of the testimony given by each of the witnesses, and determine the weight you choose to give to his or her testimony. The testimony of a witness may fail to conform to the facts as they occurred for any number of reasons including the witness is intentionally telling a falsehood, the witness• did not accurately see or hear that about which he or she testifies, the witness' recollection of the event is faulty, or the witness has not expressed himself or herself clearly in giving the testimony.

**SUPPORTIVE AUTHORITY**

Kyle v. Pawtucket Redevelopment Agency, 106 R.I. 670, 262. A.2d 636 (1970); Paquin v. Providence Washington Insurance Co., 106 R.I. 267, 259 A.2d 115 (1969); Madiera v. Pawtucket Housing Authority, 105 R.I. 511, 253 A.2d 237 (1969).

Juror's Experience

There is no magical formula by which one may evaluate testimony. You bring with you to this courtroom all of the experience and background of your lives, In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you by others. The same tests that you use in your everyday dealings are the tests which you apply in your deliberations.

Credibility/Bias of Witnesses

You are the judges of the credibility of witnesses and of the weight you will give to the testimony of each. It is your right to consider the appearance of witnesses on the stand; their manner of testifying; their apparent candor and fairness; their interest or lack of interest, if any, in the outcome of the case; and their apparent intelligence or lack of intelligence. From these, together with all the other facts and circumstances proved at trial, you may determine which of the witnesses are more worthy of belief.

You are not required to believe something to be a fact simply because a witness has stated it to be a fact, if, in the light of all the evidence, you believe such witness is mistaken or has testified falsely to the alleged fact.

Burden on Plaintiff

In this case, like most, the law places the burden of proof on the plaintiff. All this means is that the law imposes upon the plaintiff the obligation or responsibility of proving his/her claim. The law requires that one who advances a proposition has the burden of sustaining its validity. Because the plaintiff is advancing a proposition, that is, that the defendant should be held responsible for some harm he/she caused to the plaintiff, it is the plaintiff who has the responsibility of producing evidence which leads you to believe that what the plaintiff claims is more likely true than not. The defendant, on the other hand, has no obligation to produce evidence concerning the plaintiff's claim. The defendant does not have to disprove what the plaintiff claims is true. The burden is on the plaintiff to prove each of the elements of his/her claim to you.

**SUPPORTIVE AUTHORITY**

DiLibero v. Swenson, 593 A.2d 42 (R.I. 1991); Paramount Office Supply Co. Inc. v. D.A. MacIsaac. Inc., *524* A.2d 1099 (R.1. 1987); Barbieri v. E.M. Young Co., 82 RI. 382, 110 A.2d 263 (1955).

Burden on Defendant in Comparative Negligence

In this case, we have not only the plaintiff's claim that the defendant was negligent. We also have a claim that the plaintiff was negligent and that the plaintiff's own negligence was either the sole proximate cause or a proximate cause of his/her own injury. Because the defendant(s) raises this claim and proposes this proposition, the burden of proof lies with the defendant(s) with respect to the question of plaintiff's negligence. All of my instructions, then, regarding burden of proof and standard of proof apply to the defendant's claim that the plaintiff was negligent.

Preponderance of the Evidence

In additional to imposing the burden of proof on a plaintiff, the law also tells us that the proof and support of any given claim must reach a certain level or standard. In this case the level of proof required is proof by a preponderance of the evidence. The law, in addition to imposing the burden of proof on a plaintiff or claimant, also requires that

person to prove the claim he/she asserts by a fair preponderance of the evidence. To prove something by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered with that opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. Where the evidence adduced either for or against a given proposition outweighs contrary evidence, such evidence is said to preponderate. Therefore, proof by the fair preponderance of the evidence means proof by the greater weight of the evidence. In other words, a claim must be proved by evidence that has a more convincing power in the minds of jurors. In proving his/her claim, a plaintiff must prove each and every element of that claim by a preponderance of the evidence.

Elements of Negligence.

In a negligence action the plaintiff must establish that the defendant owed a duty of care to the plaintiff, that the defendant breached this duty of care and that the defendant's breach of that duty was a proximate cause of the harm or injury about which the plaintiff complains. The question of whether the defendant owes a duty of care to the plaintiff is a question for the Court. The duty to the plaintiff to operate the fishing vessel, Maria Mendonsa, with due care in the manner in which an ordinary prudent person would do under like or similar circumstances. I am instructing you that under the circumstances of this case, the defendant owed a duty to plaintiff to operate the Maria Mendonsa in a reasonably prudent manner. The question for the jury in this case is whether the defendant breached that duty and whether that breach was a proximate cause of the plaintiff's injuries.

Ordinary Prudent Person

The standard by which conduct is to be measured in determining whether due care has been exercised under the circumstances is that of an ordinary prudent person. In other words, what would an ordinary, prudent person do under like or similar circumstances.

**SUPPORTIVE AUTHORITY**

Hueston v. Narragansett Tennis Club Inc., 502 A.2d 827 (R.I. 1986).

**SUPPORTIVE AUTHORITY**

Schenck v. Roger Williams General Hospital, 119 R.I. 510, 382 A.2d *514* (1978).

Proximate Cause

(a) A proximate cause of an injury is when the act or conduct of the defendant produces an injury to the plaintiff. In other words, but for the conduct of the defendant, the injury to the plaintiff would not have occurred.

(b) The defendant is liable for the natural and probable consequences of his/her actions. Defendant's conduct may be the proximate cause of plaintiff's injury even if it is not the sole cause, the only cause or the latter cause of plaintiff's injury. Defendant's conduct is the proximate cause if it concurs and unites with some other cause which acting at the same time produces the injury to the plaintiff.

SUPPORTIVE AUTHORITY

Wells v. Uvex Winter Optical. Inc., 635 A.2d 1188 (R.I. 1994); Ouellette v. Carde, 612 A.2d 687 (1992); Hueston v. Narragansett Tennis Club Inc., 502 A.2d 827 (R.I. 1986); Schenck v. Roger Williams General Hospital, 119 R.I. 510, 382 A.2d 514 (1978).

If you find that the defendant is liable to the plaintiff for the incident and/or accident that occurred, then you should consider damages. Damages are defined in law as that amount of money which will compensate an injured party for the harm or loss which he/she has sustained. The rationale behind compensatory damages is to restore a person to the position he/she was in prior to the harm or the loss. Compensatory damages, then, is the amount of money which will replace, as near as possible, the loss or harm caused to a person.

**SUPPORTIVE AUTHORITY**

*Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct.2362 (1975).*

Burden of Proof.

(a) The burden is on the plaintiff to prove by a fair preponderance of the evidence that he/she has suffered damages as a proximate result of defendant's negligence.

(b) Plaintiff should be compensated for all damages proximately resulting from the negligence of the defendant. Plaintiff's damages must be supported by competent evidence. Damages cannot be proven by speculation.

(c) The burden is also on the plaintiff to prove by a preponderance of the evidence the extent or amount to which he has suffered one of the following elements of damages. A plaintiff must prove by a fair preponderance of the evidence the particular element of damage that he/she suffered and the extent of such damage.

**SUPPORTIVE AUTHORITY**

*Tom Shaw, Inc. v. Derecktor, 639 F.Supp. 1064 (D.R.I. 1986); Jackson v. Choquette & Co., Inc., 78 R.I. 164, 80 A.2d 172(1951).*

**JONES ACT**

Under the Jones Act, the test of a jury case is simply whether the proofs justify with reason the conclusion that the employer's negligence played any part, even the slightest in producing the injury or death for which damages are sought. *Rogers v. Missouri Pacific R. Co., 352 U.S. 500, at 506 (1957).*

Under the Jones Act, negligence claims require only a showing of slight negligence having contributed in any way to the plaintiff's injury. *Robin v. Wilson Brothers Drilling, et al. 719 F.2d 1996, 5th Cir. (1983).*

If you find from the evidence in the case that any negligence of the defendant, Tallman & Mack, contributed in any way toward any injuries or damages suffered by the plaintiff, you may find that such injury or damages was legally caused by the defendant, Tallman & Mack Co., Inc.'s act or omission.

Once negligence on the part of the defendant is established, the plaintiff need only show that his employer's negligence played any part, even the slightest, in producing the injury for which damages are sought. *Rannals v. Diamond Jo Casino, 265 Fed. 3rd 442 (6th Cir. 2001).*

Under the Jones Act, a plaintiff is required to establish by preponderance of the evidence:

1. That negligence on the part of the employer
2. That the negligence was a cause, however slight of his injuries, *Havens v. F/T Polar Mist, 996 F.2d, 215 (1993) 9th Cir.*

Plaintiff,
John Souza,
By his Attorney,

/s/ Dennis S. Baluch
Dennis S. Baluch, Esq. (#0947)
Baluch, Gianfrancesco, Mathieu & Alger
155 South Main Street, Suite 101
Providence, Rhode Island 02903
(401) 331-1434
Fax: (401) 351-9653
E-mail: dennis.baluch@bgmalaw.com

**CERTIFICATION**

I, Dennis S. Baluch, hereby certify that this document filed through the ECF system will be sent electronically, to Robert E. Collins, Esq., rcollins@clinmuzyka.com, One Washington Mall, Suite 1400, Boston, Massachusetts 02108 on this 31st day of October, 2007.

/s/ Dennis S. Baluch